No. 25-1487

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

CHARLES THERRIEN, individually and on behalf of all others
similarly situated,
*Plaintiff-Appellant,*

v.

HEARST TELEVISION, INC.,
*Defendant-Appellee,*

UNITED STATES,
*Intervenor.*

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## BRIEF FOR THE UNITED STATES AS INTERVENOR
———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney*
  *General*

DANIEL TENNY
SONIA CARSON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7241*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-8209*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND INTEREST OF THE UNITED STATES...........1

STATEMENT OF THE ISSUE....................................................................2

STATEMENT OF THE CASE ...................................................................2

      A.    Statutory Background.............................................................2

      B.    Factual Background.................................................................5

      C.    Prior Proceedings ..................................................................5

SUMMARY OF ARGUMENT ...................................................................9

STANDARD OF REVIEW........................................................................12

ARGUMENT ..............................................................................................12

THERE IS NO BASIS FOR HOLDING THE VPPA
UNCONSTITUTIONAL IN ANY RESPECT .........................................12

CONCLUSION ..........................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page(s)**

*Ambrose v. Boston Globe Media Partners LLC*,
   No. 21-10810, 2022 WL 4329373 (D. Mass. Sep. 19, 2022)...................4

*Barr v. American Ass'n of Pol. Consultants, Inc.*,
   591 U.S. 610 (2020) ...............................................................................19

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) .................................................................................21

*Buchanan v. Maine*,
   469 F.3d 158 (1st Cir. 2006) .................................................................16

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ......................................................................8, 11, 21

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749 (1985) ..................................................................11, 20, 23

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ...............................................................................19

*El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*,
   413 F.3d 110 (1st Cir. 2005) ...........................................................11, 21

*Escambia County v. McMillan*,
   466 U.S. 48 (1984) .................................................................................16

*Fanning v. FTC*,
   821 F.3d 164 (1st Cir. 2016) .................................................................22

*Florida Bar v. Went for It, Inc.*,
   515 U.S. 618 (1995) ...........................................................................19, 21

*Hamdallah v. CPC Carolina PR, LLC*,
   91 F.4th 1 (1st Cir. 2024)......................................................................12

*Kong v. United States,*
62 F.4th 608 (1st Cir. 2023) ................................................................... 17

*Mollett v. Netflix, Inc.,*
795 F.3d 1062 (9th Cir. 2015) ............................................................... 4

*Nickelodeon Consumer Priv. Litig., In re,*
827 F.3d 262 (3d Cir. 2016) ................................................................. 4

*Northwest Austin Mun. Util. Dist. No. One v. Holder,*
557 U.S. 193 (2009) ............................................................................. 16

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ............................................................................. 23

*Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC,*
92 F.4th 330 (1st Cir. 2024) ................................................................ 16

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
490 U.S. 477 (1989) ............................................................................. 22

*TikTok Inc. v. Garland,*
604 U.S. 56 (2025) ....................................................................... 11, 23

*Trans Union Corp. v. FTC,*
245 F.3d 809 (D.C. Cir. 2001) ............................................................. 19

*Williams-Yulee v. Florida Bar,*
575 U.S. 433 (2015) ..................................................................... 11, 24

*Zadvydas v. Davis,*
533 U.S. 678 (2001) ............................................................................. 17

## Statutes:

18 U.S.C. § 2710 ................................................................................... 1, 2

18 U.S.C. § 2710(a) ................................................................................. 20

18 U.S.C. § 2710(a)(1).................................................................................4

18 U.S.C. § 2710(a)(2).................................................................................4

18 U.S.C. § 2710(a)(3)............................................................... 4, 10, 13, 18

18 U.S.C. § 2710(a)(4)...................................................................... 3, 11, 24

18 U.S.C. § 2710(b)(1)...............................................................................2, 13

18 U.S.C. § 2710(b)(2)...............................................................................3, 25

18 U.S.C. § 2710(c) ........................................................................................3

28 U.S.C. § 2403(a) .......................................................................................1

## Legislative Materials:

H.R. Rep. No. 112-312 (2011)....................................................................24

S. Rep. No. 100-599 (1988),
  *as reprinted in* 1988 U.S.C.C.A.N. 4342-1............................ 4, 5, 18, 19

## INTRODUCTION AND INTEREST OF THE UNITED STATES

The United States is authorized to defend Acts of Congress whenever they are "drawn in question" in private litigation. 28 U.S.C. § 2403(a). The government has intervened in this litigation to defend the constitutionality of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710.

This is a suit by a putative class of plaintiffs who contend that defendant-appellee Hearst Television, Inc. (Hearst) violated the VPPA by providing their confidential information to third parties. Although Hearst largely defended the case on statutory grounds, it notified the district court and this Court that Hearst would argue "that the VPPA is unconstitutional because it violates the First Amendment to the U.S. Constitution as applied to the facts of this case." Dkt. No. 121, at 2; *see* Order of Ct. (Jan. 9, 2026). The United States intervened in district court to defend the constitutionality of the VPPA and participated in those proceedings, Dkt. No. 37; Dkt. No. 148, and the United States intervened in this Court to continue participating in this matter. *See* Order of Ct. (Jan. 22, 2026) (granting the motion to intervene).

The district court resolved the case in Hearst's favor on statutory grounds, and in this Court, the parties focus on statutory questions and debates about the state of the record. The United States takes no position on those disputes. But Hearst contends, at the end of its brief, that principles of constitutional avoidance counsel in favor of adopting its view of the statute, because a contrary view could contravene the First Amendment. For various reasons, this case does not provide a basis for this Court to resolve any constitutional question. But because the issue has been raised, albeit obliquely, we are filing this brief to address the constitutional points raised in Hearst's brief.

## STATEMENT OF THE ISSUE

Whether this case provides a basis to conclude that the VPPA, 18 U.S.C. § 2710, is unconstitutional in any respect.

## STATEMENT OF THE CASE

### A.    Statutory Background

The VPPA prohibits a "video tape service provider" from "knowingly" disclosing "personally identifiable information concerning any consumer" to "any person." 18 U.S.C. § 2710(b)(1). The VPPA also provides several exceptions to this prohibition, which permit (1) disclosure to the consumer; (2) disclosure the consumer has

authorized via "informed, written consent" provided "in a form distinct and separate from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely of the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary course of business of the video tape service provider"; and (6) disclosure pursuant to a court order in a civil proceeding. *Id.* § 2710(b)(2). The VPPA creates a private right of action for any aggrieved person to bring a civil suit against any person who violates its terms. *Id.* § 2710(c). The VPPA does not contemplate civil or criminal enforcement by the government.

The VPPA also defines several key terms. As relevant here, a "video tape service provider" is "any person, engaged in the business * * * of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). "Personally identifiable information" (PII) is "information which identifies a person as having requested or obtained specific video materials or services

3

from a video tape service provider." *Id.* § 2710(a)(3). A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). The "ordinary course of business" is "debt collection activities, order fulfillment, request processing, and the transfer of ownership." *Id.* § 2710(a)(2).

Congress enacted the VPPA in 1988 in response to the *Washington City Paper*'s publication of then-Supreme-Court-nominee Robert Bork's video rental history, which was obtained without his knowledge or consent. *See generally Ambrose v. Boston Globe Media Partners LLC*, No. 21-10810, 2022 WL 4329373, at *2 (D. Mass. Sep. 19, 2022) (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016)). "Members of the Judiciary Committee 'denounced the disclosure,'" and Congress passed the VPPA soon after. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. No. 100-599, at 5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5)). The VPPA was enacted "[t]o preserve personal privacy with respect to the rental, purchase[,] or delivery of video tapes or similar audio visual materials." *Ambrose*, 2022 WL 4329373, at *2 (first alteration in original) (quoting S. Rep. No. 100-599, at 1). The Senate Report cited an

individual consumer's First Amendment right to intellectual freedom among the important interests served by the legislation. *See* S. Rep. No. 100-599, at 4-5.

## B.    Factual Background

Hearst provides news and weather updates on its various mobile applications, from which Hearst collects user data. Dkt. No. 119, ¶¶ 1, 2, 14, 126, 131.

Plaintiff Charles Therrien used a Hearst mobile application. He alleged that Hearst collects user data that included records of every video viewed by users, PA213-214, and that Hearst shares this data with two third-party vendors, Braze API (Braze) and Google, which allegedly use the information to target marketing campaigns. PA219, PA221. The nature of the information that Hearst provided to Braze and Google has been disputed between the parties.

## C.    Prior Proceedings

Plaintiff brought this putative class action for declaratory and injunctive relief and damages based on Hearst's alleged disclosure of PII and video watching data. Plaintiff argues that Hearst's disclosure of PII to Braze and Google violates the VPPA. PA252. Hearst moved to dismiss the complaint. Hearst argued that plaintiff had not stated a

claim under the VPPA and, alternatively, that plaintiffs' "overbroad reading" of the VPPA "could not survive constitutional scrutiny as applied" to Hearst. Dkt. No. 18, at 27. The United States was not notified of a constitutional question and thus did not intervene to defend the VPPA.

The district court denied Hearst's motion to dismiss. The court ruled that plaintiff's allegations were sufficient to state a claim under the VPPA and rejected Hearst's constitutional arguments. Dkt. No. 32, at 12-15. Because the complaint challenged Hearst's disclosure of PII to third parties, the court explained, the case involved commercial speech and the VPPA satisfied intermediate scrutiny because it directly advanced the interest of preserving individual privacy by protecting from disclosure "the precise videos" plaintiff viewed "alongside" plaintiff's PII. *Id.* at 14.

Following extensive discovery and testimony by dueling expert witnesses, Hearst moved for summary judgment. Hearst argued that plaintiff had not shown any violation of the VPPA and that applying the VPPA to Hearst would violate the First Amendment "even assuming" its "speech is commercial." Dkt. No. 118, at 27-30. Hearst asserted that

the VPPA could not survive the intermediate scrutiny applied to laws about commercial speech because "Congress considered no empirical studies into expectations of privacy as relates to the sort of confidential sharing of anonymized information from [Hearst]" to third parties "to deliver free news and weather reports directly to Plaintiff's mobile phone" and plaintiff had not "produced studies or reports suggesting this sort of sharing results in harm to individuals" akin to public embarrassment, thus the VPPA did not directly and materially advance a government interest as applied to Hearst. *Id.* at 27-29. Hearst also asserted that, as applied, the VPPA is underinclusive, by applying to "'prerecorded' content but not 'live' content," and overinclusive, by applying "even when" there was "no publicity" of the individual's data "giving rise to fear of embarrassment or ridicule." *Id.* at 29-30. In a footnote, Hearst argued that its disclosures are not commercial speech because advertising allows Hearst to provide news content to its application users at no cost. *Id.* at 27 n.21.

The United States received notice of Hearst's constitutional challenge and intervened to defend the VPPA. Dkt. No. 148. Consistent with settled constitutional-avoidance principles, the United States

7

urged the district court to resolve all the non-constitutional questions before addressing the constitutional challenge. The United States also explained that, as the court had already concluded at the motion-to-dismiss stage, the disclosures at issue here are commercial speech and therefore subject to intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). The United States also explained that the VPPA satisfied intermediate scrutiny because the statute directly advances and appropriately fits the government's interest in protecting privacy and intellectual freedom by restricting videotape service providers from disclosing a consumer's PII to third parties without permission outside the ordinary course of business. The United States took no position on any non-constitutional questions.

The district court granted summary judgment to Hearst on statutory grounds. PA2-13. The court concluded that Hearst had not violated the VPPA because plaintiff had voluntarily provided the disclosed information to Hearst and Hearst had not disclosed any data that could reasonably and foreseeably identify plaintiff. PA7-12. The court further explained that even if the disclosed information was PII,

Hearst's actions fell within the statutory exception for disclosure in the ordinary course of business. PA12-13. The court did not address Hearst's constitutional arguments.

## SUMMARY OF ARGUMENT

This case presents no occasion to declare that the VPPA would be unconstitutional in any respect.

A. The district court granted summary judgment to Hearst because plaintiff "purposefully disclosed his email address" to Hearst and "also enabled geolocation services," PA6, PA12-13, and no reasonable jury could conclude based on the record evidence that Hearst disclosed the plaintiff's identity. PA9. This analysis does not implicate any constitutional question and Hearst's appellate brief urges this Court to affirm it. The United States takes no position on this dispute, but urges the Court to resolve the case on statutory grounds, if possible, before reaching any constitutional question.

B. Hearst posits that the VPPA could be unconstitutional if the statute were applied to Hearst "as a sweeping restriction" on "ordinary technical transmissions" that "reveal nothing private." Appellee's Br. 48-55. By its terms, the statute does not apply to transmissions that

9

"reveal nothing private"; rather, the statute applies only to the disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The parties vigorously dispute whether the information that was disclosed here falls within that category. But the hypothetical application of the statute to information that is not sensitive has no relevance to the disposition of this case or any other.

In addition, it is not disputed that Congress enacted the VPPA to protect consumer privacy interests about which the government has legitimate and genuine concerns. Hearst provides no basis for doubting the appropriateness of those concerns or the need for a statute to address them. Hearst's challenges to the statute largely posit a statute that does not exist. To the extent these arguments are addressed at all, they should be rejected.

C. Although it is not at all clear that any constitutional question is presented here, the United States identifies significant flaws in Hearst's analysis and highlights the principles relevant to a constitutional challenge to the VPPA. The VPPA regulates speech by

Hearst that is commercial because it is solely profit-motivated and related to economic interests. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1985); *El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110, 115 (1st Cir. 2005); *cf. TikTok Inc. v. Garland*, 604 U.S. 56, 71-72 (2025) (per curiam). Commercial speech is subject to intermediate scrutiny. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). Hearst did not adequately preserve an objection to this point, and its belated arguments that the statute should be subject to strict scrutiny are in any event without merit.

There is also no merit to Hearst's claims that the VPPA is not tailored adequately to survive any level of scrutiny. The limitation on the VPPA's scope to "prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. 2710(a)(4), does not render the statute underinclusive: the government "need not address all aspects of a problem in one fell swoop," *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015). And Hearst's argument that the VPPA is overinclusive as applied to "technical data that identifies no specific person or video" and "communications necessary to fulfill user requests," Br. 51 (emphasis

11

omitted), ignores the actual text and offers no basis to doubt the statute's constitutionality.

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment. *Hamdallah v. CPC Carolina PR, LLC*, 91 F.4th 1, 16 (1st Cir. 2024).

## ARGUMENT

## THERE IS NO BASIS FOR HOLDING THE VPPA UNCONSTITUTIONAL IN ANY RESPECT

This appeal involves, at its core, a dispute about statutory interpretation and about the proper understanding of the summary-judgment record. In particular, the parties dispute whether Hearst provided any PII about plaintiff to third parties and, if so, whether that disclosure qualifies for a statutory exception to the prohibition contained in the VPPA. The United States takes no position on those disputes. Hearst makes constitutional-avoidance arguments to bolster its argument for its preferred statutory construction, but those hypothetical and contingent arguments, which were not addressed by the district court, provide no basis for this Court to conclude that the VPPA is unconstitutional in any respect. If this Court believed that

12

resolution of any constitutional issue were necessary to resolve this case, it would be appropriate to remand the case so the district court could resolve those issues in the first instance in a more concrete setting. But in any event, Hearst's constitutional arguments are significantly flawed.

A. The VPPA prohibits, subject to certain exceptions, a "video tape service provider" from "knowingly" disclosing "personally identifiable information." 18 U.S.C. § 2710(b)(1). "Personally identifiable information" is defined to be "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). Thus, the first issue presented here is whether Hearst knowingly disclosed plaintiff's PII. The district court concluded that Hearst did not do so. In particular, the court stated that, viewed in the light most favorable to plaintiff, the evidence showed that Hearst had disclosed "one geolocation data point associated with Therrien's email address," PA6, which "reveals the location of a church, which Therrien testified he attends with at least 75 other congregants," PA9; one "unique and random string of numbers associated with an individual mobile device," which "is not associated

13

with a person's name or address," PA5 n.3, either alone or combined with the geolocation data point, PA10-11; and plaintiff's email address, which the record contained "insufficient evidence" to show that this information "could have [been] used" to identify plaintiff, PA11-12.

Even if the disclosed information was PII, the district court reasoned that Hearst's actions fell within the statutory exception for disclosure in the ordinary course of business. PA12-13. The court did not address Hearst's constitutional arguments in its summary judgment decision.

In this Court, plaintiff principally argues that the information at issue here provided more insight into his identity and activities than Hearst and the district court believe. Appellant's Br. 23-53; PA8-13. Plaintiff argues that the record created a triable issue of material fact about whether Hearst disclosed data "for marketing and analytics" rather than "order fulfillment and request processing," Appellant's Br. 27-35, and whether the disclosed information was in fact "reasonably and foreseeably likely" to identify plaintiff or "augmented" a third party's "ability to identify him." Appellant's Br. 43-53. In particular, plaintiff contends that his "e-mail address and 856 points of his precise

14

geolocation were disclosed to Braze and Google," and that this information could be used to identify him. Appellant's Br. 43.

Hearst responds, based on the factual record, that the information disclosed does not satisfy the definition of PII because it "did not transmit to Braze or [Google Ad Manager] video identifiers that would reveal a user's video history," Appellee's Br. 26 (quotation marks omitted); Appellee's Br. 22-37, and that Hearst did not "knowingly" disclose PII because "[w]hether geolocation or an email identifies anyone depends on recipient-specific facts" that are absent from the record here according to "Appellant's own expert." Appellee's Br. 44; *see also* Appellee's Br. 28-37, 52. Hearst also defends the district court's ruling that the disclosures were in the ordinary course of business because the information was shared "to deliver the very emails [plaintiff] requested," Appellee's Br. 38, and "optimize an ad-supported product in the way a user has requested." Appellee's Br. 43-44; *see also* Appellee's Br. 39-44.

These factual issues do not present any constitutional question. Accordingly, this Court should apply the well-established rule that "prior to reaching any constitutional questions, federal courts must

15

consider nonconstitutional grounds for decision." *Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC*, 92 F.4th 330, 346 (1st Cir. 2024) (quoting *Buchanan v. Maine*, 469 F.3d 158, 172 (1st Cir. 2006)); *see also Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (A court need "not decide a constitutional question if there is some other ground upon which to dispose of the case." (quoting *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam))).

B. At the very end of its brief, Hearst seeks to bolster its statutory argument by urging that the VPPA would be unconstitutional if the statute were applied to Hearst "as a sweeping restriction" on activities such as "ordinary technical transmissions between a news publisher and contracted software providers used to deliver free, ad-supported news and weather content and user-requested alerts" whenever "an expert hypothesizes that, with enough additional data, tools, and 'detective work', someone might infer an individual's identity and video-viewing history." Appellee's Br. 48; *see also* Appellee's Br. 49-55. But plaintiff does not appear to endorse such a broad reading of the statute; as discussed, he instead principally argues that the disclosure of information was much more significant and much more likely to be used

16

to identify him, and that the district court misunderstood the scope of the "ordinary course of business" exception. Appellant's Br. 23-35. *Supra* pp. 13-16. The United States takes no position on the proper resolution of these disputes.

To the extent that the resolution of this case requires this Court to construe the VPPA, it is settled law that this Court should avoid a construction that may raise constitutional concerns. *See Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023) ("'[I]t is a cardinal principle' of statutory interpretation * * * that when an Act of Congress raises 'a serious doubt' as to its constitutionality, 'this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'") (quoting *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001))). But it is far from clear that this case even implicates these principles, as the issues presented largely relate to factual issues rather than matters of statutory construction.

Hearst's contention (at 55) that the VPPA could not survive First Amendment scrutiny if the statute were understood as "a roaming restriction on data communications" that "reveal nothing private" assumes away critical portions of the constitutional analysis. The VPPA

17

on its face does not apply to data communications that "reveal nothing private." *See* Appellee's Br. 48-55. Rather, the statute applies only to disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The parties dispute whether the disclosures here "identifies a person" in the relevant manner, *see ibid.*, but if the disclosures satisfy the statutory standard, there is no plausible argument that the disclosures "reveal nothing private," Appellee's Br. 55.

It is only by suggesting that the VPPA covers disclosures that "reveal nothing private" that Hearst manufactures its challenge to the government interest the VPPA serves. *See* Appellee's Br. 48-55. The VPPA's actual restrictions on disclosure of information that "identifies a person," 18 U.S.C. § 2710(a)(3), protect privacy, and specifically "personal privacy with respect to the rental, purchase[,] or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1. A person's video-viewing history may reveal a variety of private details. For example, disclosure of what news videos a person watched could reveal information about a person's political affiliation or personal

18

interests; disclosure of what weather videos a person watched could reveal a person's location, or perhaps upcoming travel plans.

There is no doubt that the government has "a substantial state interest" in protecting individual privacy. *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 625 (1995) (quoting *Edenfield v. Fane*, 507 U.S. 761, 769 (1993)). Hearst likewise does not dispute that this interest extends to the privacy of consumer information. *See Barr v. American Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 650 (2020) (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("No one questions that protecting consumer privacy qualifies as a legitimate and 'genuine' interest for the government to pursue."); *Trans Union Corp. v. FTC*, 245 F.3d 809, 818 (D.C. Cir. 2001) (same). Protecting a person's video-viewing history serves "a central part of the first amendment" because "the relationship between the right of privacy and intellectual freedom" is a constitutional "pillar." S. Rep. No. 100-599, at 4. "[F]ilms are the intellectual vitamins that fuel the growth of individual thought. The whole process of intellectual growth is one of privacy—of quiet, and reflection. This intimate process should be protected from the disruptive intrusion of a roving eye." *Id.* at 7.

C. Hearst's constitutional arguments also fail on their own terms.

1. Hearst contends (at 49-52) that the VPPA is a content- and speaker-based restriction on speech that is subject to strict scrutiny. But Hearst did not preserve that issue in the district court, contesting the application of intermediate scrutiny only in a footnote. Dkt. No. 118, at 27-30. Regardless, Hearst is wrong.

The VPPA restricts a specific type of speech: disclosures that identify "a person as having requested or obtained specific video materials or services" by those "engaged in the business * * * of rental, sale, or delivery of * * * audio visual materials." *See* 18 U.S.C. § 2710(a). The definition itself limits the applicability of the statute only to those that have a "business" involving the disclosed information. Hearst is a corporation that delivers video content via its mobile applications. Dkt. No. 119, ¶¶ 1-6. It is not disputed that Hearst supports its content "by selling advertising" and uses third party services to "find[] advertisers and obtain[] the advertisements to display in the [mobile applications]." Dkt. No. 118, at 24.

Disclosures "solely motivated by the desire for profit," *see Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1985),

20

and "related solely to the economic interests of the speaker and its audience," *El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110, 115 (1st Cir. 2005) (quoting *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)), are quintessential commercial speech and thus receive limited protection. *See Florida Bar*, 515 U.S. at 623. That remains true even if the speech concerns individuals who receive information from the speaker without paying a fee. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983) ("[A]dvertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." (quoting *Central Hudson*, 447 U.S. at 562 n.5)). A court considering the constitutionality of a law restricting commercial speech applies intermediate scrutiny, which examines: (1) whether the expression "concern[s] lawful activity and [is] not * * * misleading"; (2) "whether the asserted governmental interest is substantial"; (3) "whether the regulation directly advances the governmental interest asserted"; and (4) "whether it is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566.

On appeal, Hearst briefly contends that the Supreme Court's commercial-speech jurisprudence should be limited to "the limited realms of advertising and other speech proposing a commercial transaction." Br. 53. It does not explain why this Court would set aside longstanding precedent regarding the scope of commercial speech. *See Fanning v. FTC*, 821 F.3d 164, 175 (1st Cir. 2016) (applying commercial-speech test after Supreme Court cases on which Hearst relies). The Supreme Court has explained that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). Even if this case presented any constitutional question, this Court could not adopt the novel framework Hearst proposes.

Hearst also misunderstands the VPPA's scope and purpose. As the name suggests, the Video Privacy Protection Act is a privacy statute, protecting sensitive information without regard to the content of any message in which the disclosure might be contained. The VPPA's

underlying privacy and intellectual freedom rationales are content-agnostic and the VPPA applies to disclosures of video viewing history without regard for the underlying idea or message expressed in the video. *Cf. TikTok Inc. v. Garland*, 604 U.S. 56, 71-72 (2025) (per curiam) (holding a statute is not content based when it "does not facially regulate 'particular speech because of the topic discussed or the idea or message expressed'" and was supported by a "decidedly content agnostic" rationale (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015))). And "[e]ven if the disclosures do not strictly satisfy the definition of commercial speech, speech that is 'solely in the individual interest of the speaker and its specific business audience' and does not implicate matters of public concern" is nevertheless "subject to 'many of the same concerns that argue in favor of reduced constitutional protection' for commercial speech." Dkt. No. 32, at 13 n.8 (quoting *Dun & Bradstreet*, 472 U.S. at 762 & n.8).

2. Hearst is likewise wrong to suggest (at 50-55) that the VPPA would fail any level of scrutiny because the statute is inadequately tailored to the government's interest in protecting privacy. Hearst asserts (at 52) that the VPPA is "significantly underinclusive insofar as

23

it singles out only prerecorded clips, leaving identical communications about live video and non-video content untouched." But it is well settled that the government "need not address all aspects of a problem in one fell swoop" and is permitted to focus on regulating a particular narrow issue, even though broader concerns may also exist. *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015). The limitation to "prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), may reflect the fact that, when the VPPA was enacted in 1988, commercial dissemination of live videos to identifiable consumers was essentially unknown. But any failure to update the statute in light of changing technologies would not render the VPPA unconstitutional, and any difference between live and recorded videos is neither content-based nor viewpoint-based. And in fact, Congress amended the statute in 2012 to allow for digital consent because Congress recognized that the "Internet has revolutionized how consumers rent and watch movies and television programs" and "how we share information about ourselves with others." H.R. Rep. No. 112-312, at 2-3 (2011). This belies the notion that the VPPA is limited to "the disclosure of videotape rental histories by store clerks." Appellee's Br. 52.

24

Hearst also asserts that the VPPA is overinclusive as applied to "technical data that identifies no specific person or video" and "communications necessary to fulfill user requests." Appellee's Br. 51 (emphasis omitted). But the first argument simply restates Hearst's mistaken claim that the VPPA could apply to disclosures that "reveal nothing private." *Supra* pp. 17-19. The second argument similarly ignores the actual text of the VPPA, which expressly exempts disclosure the consumer has authorized via "informed, written consent" in an appropriate form, disclosure that is "solely of the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer), and disclosure "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2). If this Court agrees with the district court, on the facts here, that the disclosure was not in fact incident to the ordinary course of business, that is a reason that Hearst might lose this case but not a reason the statute would be unconstitutional.

25

## CONCLUSION

For the foregoing reasons, this Court should not conclude that the VPPA is unconstitutional in any respect.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

DANIEL TENNY

*s/ Sonia Carson*
SONIA CARSON
*Attorneys, Appellate Staff*
*Civil Division, Room 7241*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-8209*
*sonia.m.carson@usdoj.gov*

March 2026

26

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4841 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Sonia Carson*
Sonia Carson

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Sonia Carson*
Sonia Carson